Case number 22-5037 United States v. Polk May it please the court. My name is Andrew Casey of Hendrick, Casey & Hutter. I'm here today on behalf of the appellant, Conor Polk. Your honors, the facts of Mr. Polk's life and his crimes are all important, but I think that the relevant facts that are the most important are a lot more procedural and based upon just the facets of the case law. I think there are two overarching reasons for you to remand this decision back to the district court and allow the district court to have a resentencing that is consistent with the ability to incorporate Oklahoma's Justice Safety Valve Act. So the way that I'm going to approach this is, first, I think the case law does support incorporation. And then second, I'm going to move to the district court's decision that the federal safety valve conflicts with Oklahoma's safety valve. In that first half of the argument, I'll be honest, this is an interesting academic read whenever you get through the cases from Garcia all the way to Martinez in 2021. But I think that if you read in context the Garcia decision from 1989, the Chapman decision from 2016, and the Jones decision from 2019, you do find enough reasons to be able to incorporate Oklahoma's justice safety valve into sentencing decisions that happen in Oklahoma. And I think that this is important, too, and I'm promised I'm going to save some of my more attempts to not necessarily be hyperbolic, but to advocate on behalf of my client to say this. It's an important case because this affects, in the largest part, a lot more of our criminal history category one defendants in Oklahoma that are going to see different types of sentences in federal court, whereas there's a distinction that's there. Now with that being said, Mr. Polk's crime has things in federal court that would never be allowed to have him. In state court, he'd get a possibility of a suspended sentence, and that would likely happen several times. That doesn't happen in federal court after the Wood decision in 2004. He would also, under state law, be available for things like a deferred sentence, and that's not something that's applicable in federal law as well. But I think whenever Judge Ebell wrote the Garcia decision back in 1989, I think that we've drafted or we've taken the language too far from what he wrote, in terms of how we establish what a mandatory minimum is, to have it be that language from the Eighth Circuit Norquay decision and the Wood decision about, you only look at mandatory minimums. If I look closely at the Garcia decision that... I don't see that our case law indicates you only look at mandatory minimums. It's gonna take me a second, but I have what I think is a very thoughtful response to this. Take your time. Thank you, Your Honor. That language of only is language that is derived just from that Eighth Circuit Norquay decision that was heavily quoting the Garcia case as well as the Wood case. And it does, and it's used again in the Martinez case in 2021, but I think that that is a specific part of language that runs a little bit afoul of what the true reading of Garcia was. There's an interesting debate that happens in the Jones decision in 2019, where the court invests a lot of time and reading into a Ninth Circuit decision that ultimately ends in what is called the Plouffe decision. And in the Plouffe decision, the Ninth Circuit reaches this point where they say, okay, we agree to a certain extent with Garcia, Wood, and Norquay, but we want to leave open the possibility, and we have not considered the idea that you could not incorporate further something else from state law that allows you to discuss that mandatory minimum. In the Jones decision, the court went so far as to say, we don't have to reach that decision here. That's on page 939 of the Jones decision. They say, we know that Plouffe analyzed it, but for our purposes here of what we're analyzing in the Jones case, we simply just don't have to get to it. The Martinez decision, in my esteemed read of it, whenever it gets to that discussion of Jones, seems to indicate that Jones agrees with that only language of mandatory minimums and maximums, and I think that's a misread that is handled on page 939 of the Jones decision. And whenever I get to that part, I really think that it, sure. This is an interesting academic discussion, but I wonder if any of this really matters, because whether it's permissible to consider the safety valve exception here is, I didn't get the impression the district court ruled one way or another on that, or said that we couldn't necessarily consider the safety valve exception. What the district court focused on was the conflict, and it is true, isn't it, if there is a conflict between federal and state law. We're not allowed to apply that state law, and that's where the district court went with this. So I think your second issue that you say you wanna get to, really, in some ways, ought to be the first issue, because if we can't get there because there's a conflict, all this other discussion seems somewhat academic. That's fair, Your Honor, and I think that I can divert there now after I say one quick thing, which is that, you're right, I don't think Judge Frizzell really did get into a moment where he got into that poof decision, can we versus should we. We certainly pushed him to at the district court level, but he ended it with, if I find a federal safety valve conflict, I can't get there. So, and the overarching things, if we keep that in mind, I will focus on the federal safety valve versus Oklahoma State's safety valve. Your Honor, this is not, to me, as clear of a debate as it is to Judge Frizzell I think that, and to his credit, the enumerations that are inside 3553F present trouble that I think that this court will have to grapple with, but I look at it like this. More than trouble, I mean, we've got plenty of authority saying those are the only two exceptions, the only two. And I'll say it now. Now you're asking us to apply the safety valve exception, which, the way I read it, was much, much, quite broad. The Oklahoma safety valve, you mean? Yeah. It is broad. I think that it's broad, though, but if I read it in context of the federal safety valve, I think they make a lot of sense. Let me say this about the federal safety valve. Correct, it's limited to 841, 846, 906, 960. There aren't, in the grand scheme of things, a lot of other mandatory minimums in federal law that distinguish themselves from what are identified in the Oklahoma Justice Safety Valve. And the mandatory minimums that we're talking about involve homicide and murder cases, kidnapping cases, sex offense cases, terrorism cases, career criminal enterprise cases, gun cases like 924C, some immigration, different types of things like that. Well, if you read the Oklahoma Justice Safety Valve Act, a lot of those overlap very cleanly. Whenever it says you can't have one of our violent offenses, that includes. Overlap is fine. I don't disagree there may be overlap, but because the Oklahoma Safety Valve would allow us to consider additional exceptions, that the federal sentencing guidelines are very clear that there's only two, which aren't applicable here, that's a conflict. There may be overlap, but there's a conflict. I think the reason why my position is that there's no conflict in that sense is because I don't believe Congress was meaning to exclude Section 13 from those types of consideration. If we believe the courts are enabled to set the like punishments of minimums and maximums, then they have to evaluate state law in order to get there. That's my read of Garcia through Jones. I think that the Oklahoma Justice Safety Valve is the Oklahoma legislature providing a read for how they determine what mandatory minimum sentences are. I think it's hard for me to stretch whenever I'm looking at the statutory construction of 3553F to consider that Congress is really thinking about excluding Section 13 in that way. Now certainly it has set, because it's the one that sets those mandatory minimums, it has set the mandatory minimums that it did not want applied. But I think that it's a different question to ask of Congress to have them go through Section 13 and say, what types of state laws, whenever we incorporate them, should have a mandatory minimum or not have a mandatory minimum? Or, as I understand the principles of federalism, do we just leave that to the states if they are the ones that have decided it? And I think that the Oklahoma legislature has, in its wisdom, set not just what it considers the mandatory minimums to be, but has then set this Oklahoma Justice Safety Valve, which is large part very, I think it's not, it doesn't copy the federal safety valve clearly, but it certainly takes influence with it. I mean, it's one of those types of situations where it has looked at it and said, maybe some of our mandatory minimums, in certain instances, should be able to have exceptions to them, or not necessarily even exceptions, but departures. And so that brings me back to Garcia, which is, does that analysis mean that this is a state sentencing scheme, or is it just something that goes to what the legislature in Oklahoma intended its mandatory minimums to represent? And I think that's the difference here whenever I look at it. And I cited a lot of cases on the question of the conflict that is there in federal courts, but I think that in order to get to a real read of if there is that conflict, it has to be right in the greater context of what Congress, at the United States level and at the state level, have started to identify as the things that they want to impose as mandatory minimums. I've got more thoughts. I do want to save some time for rebuttal. I've got time for questions. So, but I'll leave it to you all. If you want me to break now and save for rebuttal. It's up to you. I'll save some time for rebuttal. Thank you. Ms. Long. May I please the court, Lina Alam for the United States. There are two questions that are critical to this court's decision in this case. And they're interrelated as you've already seen. The first is whether the Oklahoma statute at issue in this case provides for a mandatory minimum. There are at least three reasons that this court should hold that it does. First, the plain language of the statute, not less than four years and not more than 20. That is exactly how a mandatory minimum is typically defined. The second is that Jones, in distinguishing the New Mexico statutory scheme, specifically points to the language in the Oklahoma statute in Wood, that said not exceeding seven years and not less than two. As being a mandatory minimum that's distinguishable from the extensive scheme that's required to determine a mandatory minimum in New Mexico. Third, and probably most important, the only way to reconcile Wood and Jones is to give meaning to the type of mandatory minimum that is defined in both Wood and in this case. Because if you look at the statute that was at the Oklahoma statute, the suspension statute 22 Oklahoma stat 991A that was at issue in Wood, it is virtually identical to the New Mexico statute at issue in Jones, 31-20-3. Both of those statutes effectively allow district courts to suspend statutes despite whatever mandatory minimum might be set elsewhere in the code for a variety of reasons. In Jones, this court held that the New Mexico scheme prevented there from being a mandatory minimum in the first place. In Wood, this court held that Oklahoma suspension statute was not something that could be applied under the Assemblative Crimes Act. So in order for both of those cases to remain good law, this court must give meaning to the words not less than four years and not more than 20 here. Assuming, as we must, that that Oklahoma statute provides a mandatory minimum, then the question is whether the Oklahoma safety valve in this case is consistent with federal sentencing policy. And for the reasons that you've already discussed in part, it is not. The Oklahoma, although there are limitations in the Oklahoma safety valve statute, it is so different from the federal safety valve statute that it's only really in name that they are both safety valves. The federal safety valve only applies to certain sections in Title 21, not even to the vast majority of Title 18 crimes. And certainly not explicitly to 18 Section 13 to the Assemblative Crimes Act. And as Judge Moritz observed, the Oklahoma Safety Valve Act effectively gives district courts, state district courts, vast discretion in deciding not to impose a mandatory minimum sentence for reasons such as this would inflict a substantial injustice on the defendant or the mandatory minimum sentence is not required to protect the public. That's just far broader than is contemplated by either the federal statutes or the federal sentencing guidelines in 5C1.2. So for those reasons, because the state sentencing policy embodied in the State Safety Valve Act cannot be reconciled with the level of discretion to depart below mandatory minimum sentences in federal court, it cannot be reconciled with federal sentencing policy. Are you suggesting that if, assuming for a moment that they aren't conflicting, that we would agree with this overlap type argument and that they're not conflicting, are you suggesting that Judge Frizzell here wouldn't have had discretion to have looked at the safety valve, Oklahoma safety valve? No, Your Honor. And I think Judge Frizzell recognized that because the way in which the Assimilative Crimes Act and the Sentencing Reform Act are read together, that state sentencing scheme, i.e. the State Safety Valve Act, is not incorporated into the federal law. And so a federal judge in his position does not have the same discretion that a state judge would have in sentencing a defendant under title, I'm sorry, under state title 42. But it could have looked to that, if it wasn't conflicting. Yes. It could. Yes, if this court were to find that the federal safety valve and the state safety valve were not conflicting, it could consider that, then Judge Frizzell would have had the ability and this court would have to remand to allow him to exercise his discretion to consider the state safety valve. But because those two statutes are conflicting and because the state statute is inconsistent with federal sentencing policy, there is a conflict. I understand the argument. I'm just trying to figure out whether it really is enough, if there is a mandatory minimum and maximum and you're within that range, is that all a district court's gonna have to do? Is it totally within their discretion then to say, well, I'm within that range, I don't need to look at the safety valve or whatever it is that doesn't conflict, whatever procedure it is that is additional, is it within their discretion just because they've come within the mandatory minimum and maximum? As long as the sentence they impose is within the mandatory minimum and maximum, yes. But I don't think, even if this court found- It should be in the sense that it's not particularly similar if you're doing that. If you can say, well, I don't need to consider these provisions that Oklahoma law provides because I don't have to. It doesn't seem that we're reaching a similar sentence that way. And the case law from Garcia on, I think all recognizes that there's a tension between the need for federal sentencing uniformity and intrastate sentencing uniformity and the compromise that courts have consistently found is that the outer boundaries of the discretion of a federal district court in sentencing under the ACA are the state mandatory minimums and maximums. And that's why it becomes so important to determine what defines a state mandatory minimum and maximum. But within the, and I think from Garcia through Wood and Jones and Martinez, and really through Chapman and Christie as well, the overarching thread is that federal district courts are bound by the mandatories and minimums, whether terms of imprisonment or probation or fines set by the state legislature. But within those mandatory minimums and maximums, the federal courts are to exercise their discretion in a manner consistent with federal sentencing policy. And the only way to read all of those cases as consistent is to interpret them in that way. If there are no other questions, I'll save the rest of my time. Thank you, counsel. Rebuttal. Thank you, Your Honors. Without belaboring too much of what I previously said, I want to challenge three different things from the government's position. First, I want to challenge the concept of what the plain language of Oklahoma statute suggests as a four-year mandatory minimum versus practical reality in state courts of Oklahoma. Here's the practical reality of this statute in Oklahoma. It's subject to deferred sentences under 22 OS 991A. It's subject to suspended sentences under 22 OS 991C. And it's considered a 33% crime, which means even if they have this here, because of the way that good credits happen, they wind up serving a year and a couple of months. As compared to in the federal counterparts, there's no parole credits. There's no, it ends up being served along the lines closer to the 85% if there is any type of good credits that are there. They can't consider it deferred. And they can't consider it suspended. The reason why that's important is this. It begs the question of what Oklahoma's legislature really considers to be a mandatory minimum because they know when they wrote 991A and 991C and everything else that was there, that somebody in their system who gets this crime is going to, in reality, serve a specific amount of time. Whereas in federal court, it is not. I mean, it's not just a small amount. I mean, it's a very large amount of difference between the two different types of sentences. And I think that has to be incorporated in the decision when you look at the overall context of the things that are involved and why incorporating the Justice Safety Valve Act from Oklahoma is important in a situation like this. I think that counsel is correct that we are talking about achieving uniformity and coexistence. And I think that that really begs the question about whenever we read the lack of application to Section 13 and 3553F, it begs the question of why wouldn't? Well, whenever I read that chapter that has Section 13 in it, the only crime that is there is misprision of a felony and that has no mandatory minimum to it. And so I don't think that it's accurate to identify that Congress is meaning or intending to make an exclusion like that. And I think that this all then goes back to this. What did Judge Ebel think about whenever he wrote in Garcia the question of what is a state sentencing scheme? It's really the court, not just Judge Ebel. You're right. It was a unanimous decision in Garcia. I apologize. That was the writer of the opinion that was joined by the other two justices. I only bring it up to say this is whenever that opinion identified the state sentencing scheme, it referred to one thing only that it didn't really want to have and incorporate from the scheme, and that was parole credits because BOP had parole credits already there and we don't want to have BOP influenced by 33% or 45% credits that we get from the state case law. I think that's summarily different than whenever we're talking about what a legislature thinks a mandatory minimum should be and how they evaluate it. That question goes a lot more to the question of this case, which is ultimately why I think reversal and remand is necessary for this decision. I don't believe that there's a conflict. I believe that you can achieve uniformity and coexistence of all the statutes that are involved, even the Federal Safety Valve Act with the Oklahoma Justice Safety Valve Act by incorporating this into what we consider to be that like punishment under the ACA. Your Honors, thank you so much. Well, thank you very much for your argument. Counselor, we appreciate both of your arguments. They've been helpful, and we will submit the case on the briefs. Counselor, excused.